140 So.2d 331 (1962)
Jeanne ASHKENAZY, Appellant,
v.
ESTATE of Saul ASHKENAZY, Appellees.
No. 61-463.
District Court of Appeal of Florida. Third District.
May 1, 1962.
Rehearing Denied May 17, 1962.
Richard K. Fink, Miami, for appellant.
Wepman & Wepman, Miami, Kovner & Mannheimer, Miami Beach, for appellees.
Before PEARSON, TILLMAN, C.J., and BARKDULL and HENDRY, JJ.
*332 HENDRY, Judge.
The appellant, Jeanne Ashkenazy, specific devisee under the will of Saul Ashkenazy, filed a petition in the County Judge's Court in and for Dade County, Florida to require the executors-appellees to exonerate certain real property from the lien of the mortgage encumbering such property; three days after the filing of the said petition the executors filed a petition in the said court for instructions. The county judge considered the petitions to be in effect petitions for the construction of the will of the deceased, Saul Ashkenazy, pursuant to § 732.41 of the Florida Statutes, F.S.A.
The petitions raised two main questions for the county judge's consideration. First, whether the appellant as the beneficiary of real property (Paragraph "Tenth" of the will set forth hereinbelow) is entitled to have such property exonerated from the lien of a mortgage. The second question is concerned with the shares of stock left to one of the specific legatees (Paragraph "Twelfth" of the will set forth hereinbelow) as to whether such legatee is entitled to recover the stock free from a lien on such stock where the lien was to secure a loan made after the execution of the will and where a timely claim was filed in the estate by the holder of such lien.
The facts in the case were presented to the trial court by way of the following stipulation:
"The following facts are hereby stipulated to by the attorneys for the Executors herein, by the attorneys for the residuary legatee, DAVID B. ASHKENAZY; and, by the attorney for the specific legatee, JEANNE ASHKENAZY; however, this Stipulation is limited to an agreement of the truth of the following facts without acknowledgment as to their materiality, relevancy or admissability.
"1. That the decedent herein, SAUL ASHKENAZY, and the specific legatee herein, JEANNE ASHKENAZY, were married each to the other on the 10th day of September, 1950, in the City of Stuart, County of Martin, State of Florida.
"2. While married, the aforesaid decedent and his aforesaid wife purchased improved real property located in Dade County, Florida, subject to an existing First Mortgage; the date of warranty deed conveying title to said property to them was the 6th day of May, 1952, and said deed was recorded on the 8th day of May, 1952, and provided as follows:
"`Subject to mortgage for $7,200.00 made by Homecraft Corporation, a Florida corporation, to National Title Insurance Company, a Florida corporation, dated August 15, 1959, and recorded in Mortgage Book 2352, page 299, and assigned to John Hancock Mutual Life Insurance Company, a Massachusetts corporation, by Assignment of Mortgage dated December 27, 1950, and recorded in Assignment Book 326. page 96, of the Public Records of Dade County, Florida. Balance on said mortgage was $6,977.81 on April 1, 1952, with interest paid to that date which balance with the grantees herein specifically assume and agree to pay.'
That said mortgage was payable at the rate of $55.00 per month. At the time decedent executed his Will, he resided on the property in question and used the same as his home; that after the execution of said Will, to-wit on or about November, 1960, decedent leased said property, and did thereafter, until the time of his death, derive rental income therefrom, and that from and after November, 1960, the same was not homestead property.
"3. The aforesaid decedent and his aforesaid wife were divorced by Final Decree of Divorce entered on the 16th day of December 1957, in Dade County Circuit Court, Chancery No. 205,751. The divorce decree ratified and incorporated *333 a Separation Agreement executed by the parties, dated September 24, 1957, which agreement provided for conveyance of the aforesaid real property by the wife to the husband and for the husband to assume the payment of the aforesaid mortgage. Pursuant to said decree and said Separation Agreement, the former wife conveyed said property to the decedent by Warranty Deed dated January 28, 1958, recorded on February 24, 1958, which deed specifically provided for the decedent to assume and agree to pay the aforesaid mortgage. The decedent continued to make the payments on said mortgage until his death, and the present principal balance of same is approximately $5,000.00.
"4. On June 6, 1960, the decedent executed a valid Last Will and Testament which provided, inter alia, as follows:
"`SECOND: I instruct my hereinafter named Executrix and Executor to pay all of my just debts as soon after my death as shall be practicable.'
"`TENTH: Unto my former wife, JEANNE ASHKENAZY, I give, devise and bequeath my house, located on Douglas Road in Coral Gables, Florida, to do with as she sees fit; unto my said former wife I likewise give, devise and bequeath my cemetary lots in Mount Sinai Far Band Cemetary in Miami to do with as she sees fit.'
"`TWELFTH: I give, devise and bequeath unto my friend, LILLIAN CONROY FINE of Miami, Florida, all of my shares in The Wellington Fund, the property legally described as:
"`Lots 1 and 2 in Block 1 of LAKE LETTA ESTATES, according to the Plat thereof, recorded in Plat Book 1, Page 70-B of Highlands County, Florida
and my automobile.'
"`FOURTEENTH: All of the rest, residue and remainder of my estate, whether real, mixed or personal, wheresoever situate, I give, devise and bequeath to my beloved nephew, DAVID B. ASHKENAZY, absolutely.'
"5. The shares referred to in Paragraph TWELFTH of the decedent's Will were unencumbered at the time of the execution of said Will, but at the time of decedent's death they, together with 513 shares of National Securities Growth Series Stock, which was part of the residual estate, were encumbered to Merchantile National Bank of Miami Beach, Florida, to secure a loan in the sum of $4,000.00, dated October 19, 1960, due and payable on April 19, 1961, with quarterly interest of 5 1/2% per annum.
"6. The decedent died on February 5, 1961.
"7. The decedent's will was admitted to Probate on February 14, 1961.
"8. No claim has been filed in the estate by the mortgagee of the above described real property.
"9. Claim has been filed in the estate by the aforesaid bank."
The county judge entered his order construing the will of the deceased which reads in part as follows:
"It is ORDERED AND ADJUDGED that the devise of the following described property located on Douglas Road in Coral Gables * * * is subject to the mortgage which encumbered said property at the death of Saul Ashkenazy, and that Jeanne Ashkenazy is obligated to make the payments on the mortgage subsequent to the date of death in order to protect her interest, and that Jeanne Ashkenazy is entitled to all income from said property subsequent to the death of the testator, less any payments made for her by the executors *334 on account of the mortgage debt or for maintenance of the property.
"It is FURTHER ORDERED AND ADJUDGED that the bequest of `all of my shares in the Wellington Fund' (133 shares of Wellington Fund, Inc.) to Lillian Conway Fine is free and clear of liens and encumbrances, and that the executors are authorized and directed to pay and satisfy the claim of the Mercantile National Bank of Miami Beach out of the residuary assets of this estate."
The first question is presented by the appellant, Jeanne Ashkenazy, who asserts that she is entitled to have the real property free and clear from the lien of the mortgage encumbering such property. The second question is presented by the appellee, David Ashkenazy, the residuary legatee, who urges, by cross-assignment of error, that the court erred in holding that the shares of stock "to Lillian Conway Fine is free and clear of liens and encumbrances".
It is the appellant's contention as to the initial question that the law is that the testator's intent controls only where the will specifically provides either for or against exoneration; that the instruction in the will for payment of debts (under paragraph "Second" above) is evidence that the intent of the testator was to have the real property exonerated from the mortgage lien; that, in the absence of the testator's intent to the contrary, the specific devisee of real property has a common law right of exoneration; and that the facts and surrounding circumstances herein, show that the testator intended that the appellant take the real property free and clear of the mortgage lien.
The executors, as one of their three principal grounds in support of the lower court's order construing the will, cite In re Comstock's Estate, 143 Fla. 500, 197 So. 121; Furlong v. Coral Gables Federal Savings & Loan Association, Fla.App. 1960, 121 So.2d 797, and In re Simpson's Estate, Fla. App. 1959, 113 So.2d 766, as controlling, notwithstanding the lower court's holding that the said cases were "of little or no value in the determination of the questions before this Court in this case because the property involved in each of [these] Florida cases was not a part of the assets in the Probate Court." The executor's second contention for affirmance is based on the county judge's finding that the testator intended "that Jeanne Ashkenazy take her devise subject to the mortgage encumbering the devised property, and that she is not entitled to exoneration". The third ground urged by the executors is that any common law right of exoneration has been abrogated or overturned by § 734.05 of the Florida Statutes, F.S.A.[1] wherein all distinctions between real and personal property were abolished and by § 733.16 of the Florida Statutes, F.S.A.[2] wherein no payment of debts may be made on claims which have not been timely filed.
The lower court, inter alia, found that the Comstock, Furlong and Simpson cases, supra, are homestead property cases which deal with the right of exoneration solely as a question of law; that the said cases are *335 concerned with property passing outside the will whereas the instant case concerns a specific devise of property passing under the will and therefore, the intent of the testator must be determined from the will itself; that the only part of the will of the deceased, Saul Ashkenazy referring to the payments of debts or liens is paragraph "Second", supra, which is a standard clause included in substantially all wills prepared by an attorney as well as most purchased printed forms and that the better judicial rule is that such a standard clause is of no value in determining the intent of the testator; that therefore the will offers no clue as to the intention of the testator with respect to the right of exoneration of the appellant, Jeanne Ashkenazy; that it is thus incumbent on the court to examine the surrounding facts and circumstances to ascertain the intention of the testator; that the court finds that it was the intention of the testator, Saul Ashkenazy, that Jeanne Ashkenazy take her devise subject to the mortgage encumbering the devised property without any right of exoneration because (1) the property was encumbered when the will was made, (2) the testator intended to devise property he then owned, which was the equity in the property and (3) the mortgage was a long term obligation which might not be paid during the lifetime of the testator; and that the filing of a claim by the mortgagee under § 733.16 of the Florida Statutes, F.S.A. is inapposite to the right of exoneration.
We have carefully studied the contentions of the parties and the findings of the lower court and it is our opinion that as to the initial question presented by the appellant, Jeanne Ashkenazy, i.e., her right as specific devisee to have the real property exonerated from the mortgage lien, the lower court was in error.
Our research has confirmed appellant's position that this exact question is one of first impression in this state. We agree with the learned county judge that the homestead cases, cited supra, and the case of Lopez v. Lopez, Fla. 1956, 90 So.2d 456, which deals with the right of exoneration with respect to an estate by the entireties, are readily distinguishable from the case at bar. Those cases are concerned with exoneration rights as to property passing outside the will and therefore present a materially different query.
We hold that since no statute has been passed changing the common-law rule of exoneration,[3] the common-law rule remains in full force and effect by reason of § 2 of Article XVIII of the Constitution of Florida, 26 F.S.A.[4] The decisive determination therefore is the application of the common-law rule to the situation at hand. We find the common-law rule to be that the specific devisee of real property is entitled to have the mortgage on the devised property paid at the expense of the residue of the estate[5] unless the will expressly shows a contrary intent[6] or an implied intent not to exonerate can be extracted from the provisions of the will as a whole when viewed in light of the surrounding circumstances.[7]
*336 In the case at bar, we find that the deceased, Saul Ashkenazy, did not expressly signify any intention not to exonerate the property here involved from the mortgage lien. In so finding, we fully concur with the lower court that the general direction in paragraph "Second" of the decedent's will, i.e., "to pay all of my just debts as soon after my death as shall be practicable" does not, of itself, indicate a positive intent to exonerate the real property.[8] Hence, unless an implied intent not to exonerate can be elicited from the entire will when scrutinized in the light of the surrounding circumstances,[9] the appellant, Jeanne Ashkenazy, is entitled to have the real property exonerated.
The lower court, in concluding that it was the intent of the deceased not to exonerate the specific devise of real property, stated that the grounds for such a conclusion were:
"1. The land was encumbered when the will was made.
"2. The testator intended to devise the property he then owned, which was the equity in the property.
"3. The mortgage was a long term obligation which might not be paid in the lifetime of the testator."
While we are in accord that the abovequoted grounds were indicative of an implied intent not to exonerate, we feel that the lower court failed to take into consideration other factors which, at the very least, counterbalanced those indicators that there was an implied intent not to exonerate. These factors were:
1. The fact that as part of the separation agreement between the decedent and the appellant, the decedent assumed payment of the mortgage in return for the appellant-wife's conveying such property to the decedent. It is our belief that this evinced an intention to exonerate. This is so, because the failure to exonerate the real property from the mortgage lien would put the appellant in almost the same position as before the separation agreement and would, in effect, nullify the obvious gift intended to the former wife by the devise in question.
2. The will and the entire record reveal that the deceased, Saul Ashkenazy, was a very benevolent man who was in the habit of making charitable gifts all over the world.[10] An interpretation of paragraph "Tenth" (which is the provision in favor of appellant, Jeanne Ashkenazy) as the executors so interpret it, would leave the deceased's former wife little, if anything. *337 This is in contravention of the will read as a whole in that the applicable provisions show that there was still some closeness of relationship between the decedent and his former wife.[11]
3. The fact that the mortgage is not of such size in relation to the residuary estate that application of the common-law rule of exoneration would operate to deprive the residuary legatee of most of his estate and thus prevent, to a large extent, the testamentary plan of disposition.
It is our belief that these further factors divulge an intention by the decedent, Saul Ashkenazy, to exonerate the real property in question. Assuming arguendo, however, that these factors do no more than counteract the aforesaid findings of the lower court, we would still reverse the order appealed as to this question because the common-law rule was that a specific devisee was entitled to exoneration absent an intent to the contrary. In other words, the burden of proof in such a situation is on the residuary legatee.
We hold that the common-law rule as to the right of exoneration is here controlling and there being no contrary testamentary intent shown, either express or implied, the appellant, Jeanne Ashkenazy was entitled to have the real property exonerated from the mortgage lien.
As to the second question, i.e., the right of the specific legatee, Lillian Conroy Fine, to have the shares of stock (under paragraph "Twelfth") exonerated from all liens thereon, we affirm the lower court's holding that it was the intention of the testator that this legacy be exonerated from all liens. We concur with the lower court that the factors which evince an intention of exoneration as to the shares were:
"1. The shares of stock were not encumbered when the will was made.
"2. The testator intended to bequeath the property he then owned, which was free and clear.
"3. The bank loan was a short term obligation which the testator expected to pay in his lifetime."
We have reviewed the other contentions of the parties and have found them to be without merit.[12]
It follows, therefore, that the order appealed is in all respects affirmed except that it is reversed so that the appellant, Jeanne Ashkenazy, shall have a right to have the real property in question exonerated from the mortgage lien.
Affirmed in part and reversed in part.
NOTES
[1] Section 734.05 reads in part:

"Order in which assets are appropriated
* * * * *
"No priority shall exist as between real and personal property."
[2] Section 733.16 provides in part as follows:

"No claim or demand, whether due or not * * * shall be valid or binding upon an estate, or upon the personal representative thereof, or upon any heir, legatee or devisee of the decedent unless the same shall be in writing * * * and shall be sworn to by the claimant, his agent or attorney, and be filed in the office of the county judge granting letters * * * and no cause of action, at law or in equity, * * * shall survive the death of the person against whom such claim may be made, whether suit be pending at the time of the death of such person or not, unless such claim be filed in the manner and within the said six months as aforesaid;"
[3] For a recent judicial determination of the applicability of the common-law rule of exoneration, see In re Budd's Estate, 11 Wis.2d 248, 105 N.W.2d 358.
[4] This provision of the constitution reads:

"All laws now in force not inconsistent with this Constitution shall continue in force until they shall expire by their own limitation, or be repealed by the Legislature."
[5] King v. King, 3 P.Wms. 358, 361, 24 Eng.Rep. 1100 (Ch. 1735); Bartholomew v. May, 1 Atk. 487, 26 Eng.Rep. 309 (Ch. 1737); Cope v. Cope, 2 Salk 449, 1 Eq.Ca.Abr. 269, 21 Eng.Rep. 1038 (Ch. 1707); Hill v. Bishop of London, 1 Atk. 618, 26 Eng.Rep. 388 (Ch. 1738); In re Fogarty's Estate, 165 Misc. 78, 300 N.Y.S. 231; Annot., 19 A.L.R. 1421.
[6] Galton v. Hancock, 2 Atk. 424, 26 Eng. Rep. 656 (Ch. 1742); Annot., 5 A.L.R. 488; 3 American Law of Property § 14.25 (Casner Ed. 1952); Thompson, Wills § 484.
[7] Taylor v. Broadway Methodist Church, 269 Ky. 108, 106 S.W.2d 69; Howell v. Ott, 182 Miss. 252, 180 So. 52, 181 So. 740; Savings Trust Co. v. Beck, Mo. App. 1934, 73 S.W.2d 282. See 97 C.J.S. Wills § 1316(b) (1), p. 221.
[8] Savings Trust Co. v. Beck, Id.; In re MeNulta. 168 Wash. 397, 12 P.2d 389; In re Budd's Estate, 11 Wis.2d 248, 105 N.W.2d 358; see Annot., 5 A.L.R. 488 at 505 and cases cited therein.
[9] General Rules of construction limit the consideration of surrounding circumstances to those existing at the time of the execution of the will. Annot., 94 A.L.R. 26 at 222 and cases cited therein.
[10] The will itself reflects the testator's beneficence throughout the world. Certain of the applicable provisions read as follows:

"SIXTH: I give, devise and bequeath all of my undivided interest in and to the 313 acres in Marion County, Florida unto the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Miami Branch, for the support of its work.
"SEVENTH: I give, devise and bequeath all of my undivided interest in and to 30 acres adjoining the City of Melbourne on Kissimmee Road, unto the KUPAT CHOLIM of Histradrut in the State of Israel for furnishing and creating a room in the hospital given in memory of my mother, Hilmo Ashkenazy; in the said room there shall be erected a plaque or tablets with appropriate language, indicating the bequest in my mother's memory.
"EIGHTH: I give, devise and bequeath those lots located in the City of Miami Beach, Florida, presently the subject matter of a Ninety-Nine (99) Year Lease from S. Ashkenazy to Louis Small, unto my hereinafter named Executors and Trustees IN TRUST NEVERTHELESS for the purposes hereinafter set forth.
"The Trustees hereinafter named shall hold title to the above described land, receiving therefrom the rentals payable under said Ninety-nine (99) Year Lease; said Trustees shall pay the said income unto JOSEPH and NATAKA BURSTEIN of Tel Aviv, Israel, for the use of their son, MAHUM, for his education; after the completion of the education of MAHUM BURSTEIN, the income from the said trust shall be given over unto the HEBREW UNIVERSITY in Jerusalem to be used for a scholarship fund for needy students; said scholarship fund is to be administered under the name of `The Jeanne and Saul Ashkenazy Scholarship Fund.'
"In the event the said land shall be purchased by the Lessee under certain provisions contained in that Ninety-Nine (99) Year Lease above referred to, then and in that event so much of the proceeds of that sale as shall be necessary for the education of MAHUM BURSTEIN, son of JOSEPH and NATAKA BURSTEIN, shall be disbursed by the Trustees for such education, consistent with the provision herein contained, and the balance thereof shall be paid over directly to the HEBREW UNIVERSITY in Jerusalem for and as a scholarship fund for needy students to be administered as hereinabove provided."
[11] Tipping v. Tipping, 1 P.Wms. 729, 24 Eng.Rep. 589 (Ch. 1721); Byrne v. Hume, 84 Mich. 185, 47 N.W. 679.
[12] We find no merit to the executors-appellees' argument that §§ 734.05 and 733.16, Fla. Stat., F.S.A., abrogated or changed the common-law rule.